UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CONNIE HARRIS, KRISTI SCOCCO, SUSAN SARTAIN, MARY MIHOVILICH, DAVID ASUNCION, BRIAN JAEGER, JUDY JAEGER, MARY CANTU, KRISTEN WEISE, KATRINA JOHNSON, CATHERINE CLEMENS, MARK MILLER, MARY MIOTKE, DALE DOYON, AARON HEINTZMAN, SARA MCNAMARA, ERIN BAST, and MARIA SAGISI GEISS, as individuals,

*Plaintiffs*,

v.

U.S. BANKCORP, BANK OF AMERICA, N.A., & KEYCORP, national banking associations,

*Defendants*.

CASE NO. 2:19-cv-00291-BJR

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT; GRANTING IN PART DEFENDANT KEYCORP'S MOTION TO DISMISS

## I. INTRODUCTION

Eighteen individual plaintiffs ("Plaintiffs") have brought this action against three bank defendants, U.S. BankCorp, Bank of America, and KeyCorp ("Defendants"), asserting that Defendants wrongfully refused to honor Plaintiffs' bonds, issued between 1980 and 1987. In their amended complaint, Plaintiffs assert five claims: (1) breach of contract, (2) violation of the Washington Consumer Protection Act, (3) conversion, (4) negligence, and (5) restitution for unjust enrichment. Currently before the Court are (1) KeyCorp's Motion to Dismiss all claims on various grounds; and (2) Plaintiff's Motion to Amend Complaint. Having reviewed the pleadings, the

1

record of this case, and the relevant legal authorities, the Court hereby grants the Motion to Amend, and grants in part and denies in part the Motion to Dismiss, as set forth below.

## II. BACKGROUND

The following is a summary of Plaintiffs' factual allegations, which the Court accepts as true for purposes of this motion. Plaintiffs are owners of bonds that were issued between 1980 and 1987 by Seattle-First National Banks, American Savings Bank of Tacoma, and Rainier National Banks. Am. Compl. ¶¶ 13–30, Dkt. No. 11-1. Between 1983 and 1992, through multiple mergers and acquisitions, Bank of America acquired these three banks, including obligations on bonds issued by these banks. *Id.* ¶¶ 6–12. Sometime after 1992, U.S. BankCorp and KeyCorp each purchased several Rainier National Bank branches from Bank of America, including deposits and obligations on bonds issued by those branches. *Id.*

Six out of eighteen Plaintiffs, Mihovilich, Weise, Johnson, Miller, Doyon, and Bast, have asserted claims against KeyCorp. *Id.* ¶¶ 13–29. They are registered owners, or heirs of owners, of bank bonds or time deposits, all issued by Rainier Bank. *Id.* ¶ 30. According to Plaintiffs, Rainier Bank, Bank of America, and KeyCorp never notified Plaintiffs that they were not renewing Plaintiffs' bonds. *Id.* ¶ 34. When Plaintiffs recently attempted to redeem their bonds, KeyCorp refused to honor the bonds. *Id.* ¶ 42. KeyCorp told Plaintiffs that the bonds were worthless because the bonds had already been redeemed or escheated to the State of Washington. *Id.* ¶ 43.

Plaintiffs filed the original complaint on February 28, 2019. KeyCorp moved to dismiss all claims on April 1, 2019. Plaintiffs filed a motion for leave to amend their complaint on April 11, 2019. As noted below, the Court grants Plaintiffs leave to amend their complaint, and thus considers KeyCorp's motion to dismiss as applied to Plaintiff's amended complaint, as requested by the parties.

## III. LEGAL STANDARDS

A Rule 12(b)(6) motion tests the legal sufficiency of claims asserted in a complaint. To survive such a motion, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "facially plausible" when the plaintiff pleads sufficient facts for a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining whether a complaint "states a plausible claim for relief," the reviewing court must "draw on its judicial experience and common sense." *Id.* at 679.

When considering a motion to dismiss, a court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from those allegations in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not, however, accept as true unreasonable inferences or conclusory legal assertions cast in the form of factual allegations. *See Twombly*, 550 U.S. at 553–56.

## IV. DISCUSSION

### A. Plaintiffs' Motion to Amend the Complaint

Federal Rule of Civil Procedure 15(a) directs courts to freely give a party leave to amend its pleading when justice so requires. Fed. R. Civ. P. 15(a). A court should give leave to amend "in the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely

abuse of that discretion and inconsistent with the spirit of the Federal Rules."); *see Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (noting that a court considers several factors such as undue delay, bad faith, futility of amendment, and prejudice to the opposing party when determining the propriety of a motion for leave to amend). In determining the propriety of a motion for leave to amend, the crucial factor is the resulting prejudice to the opposing party. *Howey*, 481 F.2d at 1190 (holding that the trial court's denial of leave to amend was abuse of discretion even with five-year delay because there was no showing of prejudice to the opposing party).

Here, Plaintiffs filed a motion for leave to amend their complaint just a few weeks after they filed the original complaint. As discussed more fully below, the amended complaint is not futile because Plaintiffs clarify their allegations that Defendants assumed liability for the bonds during the mergers and acquisitions. Am. Compl. ¶¶ 6–11. Moreover, because this case is still in the early stages and little discovery has taken place, there is no undue prejudice to KeyCorp. Therefore, the Court grants Plaintiffs leave to amend their complaint. *See Howey*, 481 F.2d at 1190. The Court considers KeyCorp's motion to dismiss as applied to Plaintiffs' amended complaint.

**B.     The Relevant Statutes of Limitations and Laches Do Not Bar Plaintiffs' Claims**

KeyCorp first moves to dismiss all claims based on the grounds of the statute of limitations and laches. As discussed below, based on the facts alleged, the Court rejects KeyCorp's argument that Plaintiffs' legal injuries occurred sometime before February 28, 2013 because Plaintiffs knew or should have known about KeyCorp's intention not to honor their bonds.

The parties do not dispute that the applicable statute of limitations periods are six years for breach of contract, four years for violation of Washington Consumer Protection Act, and three years for negligence, conversion and unjust enrichment claims. *See* RCW 4.16.040(1); RCW

19.86.120; RCW 4.16.080(2); RCW 4.16.080. The parties, however, dispute when Plaintiffs' causes of action began to accrue. Plaintiffs assert that the causes of action accrued only recently when KeyCorp declined to honor the terms of the bonds and advised Plaintiffs that their bonds had no value. Pls.' Resp. 9, Dkt. No. 13. KeyCorp contends that the cause of action began to accrue much earlier because KeyCorp (and other Defendants) did not communicate with Plaintiffs about their bonds for over 20 years. Mot. Dismiss 9, Dkt. No. 10. KeyCorp argues that lack of communication for more than 20 years was sufficient to have placed Plaintiffs on notice about its intention not to honor their bonds. *Id.* KeyCorp does not say when, precisely, Plaintiffs were on actual or constructive notice, except to imply that it was earlier than February 28, 2013—six years before Plaintiffs filed their original complaint. *Id.*

A cause of action accrues when the party "has the right to apply to a court for relief" and "can establish each element of the action." *Deegan v. Windermere Real Estate/Center-Isle, Inc.*, 391 P.3d 582, 591 (Wash. Ct. App. 2017). Generally, this occurs when the plaintiff suffers some form of injury or damage. *Crisman v. Crisman*, 931 P.2d 163, 165 (Wash. Ct. App. 1997). But the discovery rule may apply where "injured parties do not, or cannot, know they have been injured." *Deegan*, 391 P.3d at 591. Under the discovery rule, "a cause of action accrues when the plaintiff, through the exercise of due diligence, knew or should have known the basis for the cause of action." *Id.*; *see Crisman*, 931 P.2d at 165 (holding that the court may apply the discovery rule as long as the delay between the injury and the plaintiff's discovery of it was not caused by the plaintiff sleeping on his rights). With or without the discovery rule, the defendant asserting a statute of limitations defense bears the burden of proof. *See Wm. Dickson Co. v. Pierce Cty.*, 116 P.3d 409, 414 (Wash. Ct. App. 2005) (party asserting the time bar bears the burden of proof); *Mayer v. City of Seattle*, 10 P.3d 408, 414 (Wash. Ct. App. 2000) (defendant asserting the time bar did not

meet his burden of proof because a genuine issue of material fact existed regarding when the statute of limitations began to accrue).

Here, KeyCorp argues that Plaintiffs' cause of action began to accrue when lack of communication about their bonds for more than 20 years placed Plaintiffs on notice about KeyCorp's intention not to honor the bonds. Mot. Dismiss 8–9. Plaintiffs contend that lack of communication did not necessarily trigger their legal injury because it could also have meant that their bonds were automatically renewing. Pls.' Resp. 7–9. Plaintiffs argue additionally that in fact the bank *did* maintain communication with the bond owners but did not notify them that their bonds were not being renewed. *Id.*

The Court finds that Plaintiffs have alleged sufficient facts to support their position that their legal injuries occurred only recently, that is, when KeyCorp declined to honor their bonds. Whether lack of communication from KeyCorp about the bonds would have placed Plaintiffs on notice about their legal injury remains disputed—indeed, as noted above, KeyCorp itself fails to specify when, in fact, the alleged injuries may have accrued. Therefore, KeyCorp fails to meet its burden of proving that the relevant statutes of limitations ran before Plaintiffs filed their original complaint. *See Mayer*, 10 P.3d at 414. KeyCorp's motion to dismiss the claims on the ground of the statute of limitations is denied.

Similarly, KeyCorp fails to meet its burden to establish that laches bars Plaintiffs' claims. The defendant asserting laches as a defense must prove all three elements: (1) the plaintiff had knowledge or a reasonable opportunity to discover facts constituting a cause of action; (2) there was an unreasonable delay by the plaintiff in commencing the action; and (3) there is damage, prejudice or disadvantage to the defendant, or an innocent third party, resulting from the delay. *Nettles v. Beckley*, 648 P.2d 508, 510 (Wash. Ct. App. 1982). As previously noted, KeyCorp fails

to establish at this stage, by uncontroverted facts, when Plaintiffs knew or should have known about KeyCorp's intention not to honor their bonds. The Court therefore also declines to dismiss the claims on the ground of laches.

### C. Plaintiffs Sufficiently Allege That KeyCorp Is Liable for Their Bonds

Plaintiffs allege that KeyCorp is liable for their bonds asserting that KeyCorp purchased several Rainier Bank branches and that the purchase included the obligations on bank bonds and time deposits issued by those branches. Pls.' Resp. 4–5. KeyCorp argues that Plaintiffs' statements are merely assumptions or conclusory allegations that are not supported with alleged facts. Mot. Dismiss 6–7.

Under the general rule in Washington, "a corporation purchasing the assets of another corporation does not, by reason of the purchase of assets, become liable for the debts and liabilities of the selling corporation." *Hall v. Armstrong Cork, Inc.*, 692 P.2d 787, 789–90 (Wash. 1984). There are, however, four well-established exceptions to this rule: when (1) the purchaser expressly or impliedly assumes liability, (2) the purchase is a de facto merger or consolidation, (3) the purchaser is a mere continuation of the seller, or (4) the transfer of assets is for the fraudulent purpose of escaping liability. *Id.*

Here, Plaintiffs allege that KeyCorp purchased several Rainier Bank branches, including Rainier Bank's Grays Harbor Branch, Magnolia Branch, University Branch, Goldendale Branch, and Crown Hill Branch. Am. Compl. ¶ 9. Plaintiffs explicitly allege in their Amended Complaint that KeyCorp's purchase included the deposits and obligations on bonds issued by those branches. *Id.* At this stage of the litigation, that is, before discovery has taken place, Plaintiffs are not expected to produce any evidence to support their allegations. The Court must accept the facts proffered in the complaint as true and draw reasonable inferences in favor of Plaintiffs. *See Cahill*,

80 F.3d at 337–38. Assuming that KeyCorp's purchase of Rainier Bank's branches included the deposits and obligations on Plaintiffs' bonds, KeyCorp falls under the first exception. Therefore, the Court rejects KeyCorp's argument that Plaintiffs have failed to allege that KeyCorp is liable for the bonds.

**D.    The Washington Consumer Protection Act Claim**

Washington enacted the Consumer Protection Act ("CPA") "to complement federal law on restraint of trade, unfair competition, and unfair, fraudulent, and deceptive acts to protect the public and promote honest competition." RCW 19.86.920. Plaintiffs assert that KeyCorp violated the CPA when it told Plaintiffs that their bonds had no value and refused to redeem the bonds without investigation. Am. Compl. ¶¶ 67–72. KeyCorp moves to dismiss this claim on two distinct grounds, arguing that: (1) the alleged activities are exempt from the CPA; and (2) Plaintiffs fail to allege the public interest element that is required to establish a CPA claim. Mot. Dismiss 11–15.

**i.    The Activities Alleged in This Case Are Not Exempt from the CPA**

The CPA does not apply to actions or transactions that are "otherwise permitted, prohibited, or regulated under laws administered by…any other regulatory body or officer acting under statutory authority of…the United States[.]" RCW 19.86.170. KeyCorp argues that this exemption applies to the allegedly unfair business practice in this case because the National Bank Act, 12 U.S.C. § 21 et seq., and the Office of the Comptroller of the Currency ("OCC") regulate unfair and deceptive practices by national banks. Mot. Dismiss 11.

The Washington Supreme Court, however, has explained that courts should narrowly construe the scope of the CPA exemptions and liberally construe the CPA to serve its beneficial purposes. *Vogt v. Seattle-First Nat'l Bank*, 817 P.2d 1364, 1370 (Wash. 1991); *see also* RCW 19.86.920 ("[T]his act shall be liberally construed that its beneficial purposes may be served.").

Courts should not exempt actions or transactions merely because they are regulated generally, and should apply the exemption "only if the particular practice found to be unfair or deceptive is *specifically* permitted, prohibited, or regulated." *Vogt*, 817 P.2d at 1370 (emphasis added) (holding that "[a]lthough the [OCC] has regulatory and supervisory authority over national banks, that authority alone does not result in exemption under the [CPA]" for the bank's allegedly wrongful conduct; the bank's conduct of charging unreasonable amount of trustee fees was subject to the CPA because its practice was not specifically permitted by federal regulation).

Here, KeyCorp fails to explain, to the requisite degree of specificity, how the NBA permits or regulates the alleged practices of misrepresenting the validity of bonds and refusing to redeem them without investigation. *See Vogt*, 817 P.2d at 1370 ("Exemption under the Consumer Protection Act is applied only after determining whether the specific action is permitted, prohibited, regulated or required by a regulatory body or statute."). Without citation to a specific provision in the NBA, or OCC regulations, KeyCorp vaguely asserts only that the NBA governs "allegedly deceptive representations to consumers concerning specific investments." Def. Reply 7, Dkt. No. 16. Such general averment fails to meet the specificity prescribed by *Vogt*. Furthermore, KeyCorp's reliance on *Vatomanyuk v. Quality Loan Service Corporation* is misplaced. *See* 699 F. Supp. 2d 1242 (W.D. Wash. 2010). In *Vatomanyuk,* this Court found that plaintiff's CPA claim was not viable because the NBA regulates the specific practices related to mortgage lending at issue in that case. *See* 699 F. Supp. 2d at 1246 (citing *Fultz v. World Sav. & Loan Ass'n*, No. C08-0343RSL, 2008 WL 4131512, at *2 (W.D. Wash. Aug. 18, 2008), in which the question was whether "the state laws are being used by plaintiffs as a vehicle to impose limitations on the exercise of national banks' real estate lending power"). KeyCorp has failed to point to a similar provision in the NBA—governing the practice of issuing and redeeming bonds,

notifying bondholders of the validity or invalidity of those bonds, or any other specific issues in this case—that would trigger the exemption provision of the CPA.

In light of the long-standing and emphatic admonitions to courts to construe the CPA broadly (and its exceptions narrowly), and in the absence of citation to provisions in the NBA specifically governing the activities alleged in this case, the Court declines to extend the holding of *Vatomanyuk*. The activities alleged in this case do not fall under the CPA exemptions at RCW 19.86.170.

In a related argument, KeyCorp also argues that the OCC, instead of the Court, should make the initial decision over the current matter under the doctrine of primary jurisdiction. Mot. Dismiss 11–12. A court has the discretion to defer to an agency after consideration of the following three factors:

1. The administrative agency has the authority to resolve issues that would be referred to it by the court;

2. The agency must have special competence over all or some part of the controversy which renders the agency better able than the court to resolve the issues; and

3. The claim before the court must involve issues that fall within the scope of a pervasive regulatory scheme so that the danger exists that judicial action would conflict with the regulatory scheme.

*Vogt*, 817 P.2d at 1371–72.

KeyCorp asserts that the OCC has authority to resolve questions of unfair and deceptive practices by national banks. Mot. Dismiss 12–13. However, KeyCorp fails to satisfy any of the three criteria necessary to persuade this Court to defer to the federal agency.[1] No specialized

---

[1] KeyCorp relies on *Miller v. U.S. Bank, N.A.*, 865 P.2d 536 (Wash. Ct. App. 1994), in which the court dismissed the CPA claim because the OCC had primary jurisdiction to decide whether the bank's loan collection practices were unfair or deceptive. Mot. Dismiss 12–13. *Miller*, however, can be distinguished from this case. Unlike *Miller*, where the court found that the OCC specifically regulated the relationship between a national bank and its customers

knowledge is required to evaluate Plaintiffs' CPA claim. KeyCorp has not explained how the danger of a conflicting resolution might arise. And while the OCC may indeed have authority to resolve the issues presented by Plaintiffs' claims, there is no indication whether and how it might do so. The Court declines to dismiss the CPA claim under the doctrine of primary jurisdiction.

### ii. Plaintiffs Sufficiently Allege that KeyCorp's Acts Affect Public Interest

To establish a claim under the CPA, a private plaintiff must establish all five elements: the defendant's act (1) is unfair or deceptive, (2) occurs in the conduct of trade or commerce, (3) affects public interest, and (4) causes (5) injury to plaintiff in his business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986). KeyCorp argues that Plaintiffs' CPA claim fails because Plaintiffs' factual allegations do not satisfy the third element. Mot. Dismiss 14. KeyCorp asserts that Plaintiffs' allegation that KeyCorp refused to redeem other similar bonds does not satisfy the public interest element because Plaintiffs did not indicate the number of potential bond owners who may reside in Washington. Def. Reply 8. Plaintiffs counter that they have satisfied the public interest element. Pls.' Resp. 20. Plaintiffs allege that KeyCorp's actions affect the public interest because Rainier Bank issued "numerous similar other bonds to numerous other people" and KeyCorp is refusing to redeem those bonds. Am. Compl. ¶ 74.

To establish the public interest element, a private plaintiff must show that his lawsuit serves the public interest. *Hangman*, 719 P.2d at 537–39. When determining whether the public has an interest in an action involving consumer transactions, a court considers the following factors: (1) were the alleged acts committed in the course of defendant's business? (2) are the acts part of

---

concerning bank's loan collection practices, the Court in this case did not find that the OCC specifically regulated bank's practice of issuing and redeeming bonds. *See* 865 P.2d at 540.

a pattern or generalized course of conduct? (3) were repeated acts committed prior to the act involving plaintiff? (4) is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) if the act complained of involved a single transaction, were many consumers affected or likely to be affected by it? *Id.*; *see Travis v. Wash. Horse Breeders Ass'n*, 759 P.2d 418, 423 (Wash. 1988) (holding that the public interest element was met when the defendants sold a defective racehorse to the plaintiff because the sale was conducted in the course of business and the defendants' long standing sales practice would likely affect other customers, jockeys and the betting public).

Here, assuming Plaintiffs' allegations are true, all five public interest questions are answered in the affirmative. KeyCorp, in the course of its business, allegedly refused to redeem Plaintiffs' bonds without investigation and told Plaintiffs that the bonds had no value. Am. Compl. ¶¶ 67–68. KeyCorp repeated its practice to at least six Plaintiffs. There is a real and substantial potential for repetition of its conduct when other bond owners come to redeem similar bonds. There are "numerous" potential customers who may be affected by KeyCorp's current policy. Therefore, at this stage, Plaintiffs' allegations satisfy the public interest element and survive a motion to dismiss. *See Travis*, 759 P.2d at 423.

KeyCorp also asserts that Plaintiffs fail to show that KeyCorp's allegedly deceptive act has the capacity to deceive a "substantial portion" of the public. Mot. Dismiss 14. The Washington Court of Appeals has recognized that determining whether the deceptive act has the capacity to deceive a substantial portion of the public is a question of fact. *Behnke v. Ahrens*, 294 P.3d 729, 735–36 (Wash. Ct. App. 2012). Washington courts have declined to determine as a matter of law what constitutes "substantial portion of the public." *Id.* Instead, the courts examine whether the deceptive acts are "unique to the relationship between plaintiff and defendant." *Id.* Because there

is no threshold number as a matter of law and there remains a question of fact whether there are a sufficiently large number of people who may be harmed by KeyCorp's alleged acts, the Court will not dismiss this claim.

E.  **The Independent Duty Doctrine Bars Plaintiffs' Negligence Claim**

Under the independent duty doctrine, a party cannot recover for a negligence claim that sounds in a breach of contract. *Steinbock v. Ferry Cty. Pub. Util. Dist. No. 1*, 269 P.3d 275, 281 (Wash. Ct. App. 2011). KeyCorp moves to dismiss Plaintiffs' negligence claim, asserting that it did not owe Plaintiffs a duty of care independent of its alleged promises contained in the parties' contracts (i.e. the bonds). Mot. Dismiss 10–11. Plaintiffs counter that they have alleged sufficient facts to establish that KeyCorp owed them an independent duty of care and that it breached that duty. Pls.' Resp. 11–12.

Specifically, Plaintiffs argue that KeyCorp had a duty to provide Plaintiffs with correct information about their bonds and that it neglected this duty when it provided Plaintiffs with false information. *Id.* Plaintiffs assert that their negligence claim survives the independent duty doctrine because the tort duties were independent from KeyCorp's contractual duty to pay Plaintiffs in accordance with the terms of the bonds. *Id.*

Under the independent duty doctrine, a plaintiff can recover tort damages if the injury "traces back to the breach of a tort duty arising independently of the terms of the contract." *Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1262 (Wash. 2010) (holding that the plaintiff could recover tort damages when her lessee committed waste on the property because a tort duty not to commit waste was independent from the contractual obligation to maintain the property in good condition); *see also Jackowski v. Borchelt*, 278 P.3d 1100, 1109 (Wash. 2012) (holding that the independent duty doctrine did not bar the plaintiff's claim of negligent

13

misrepresentation, but "only to the extent the duty to not commit negligent misrepresentation is independent of the contract").

Here, unlike in *Eastwood*, where the defendant had a tort duty not to commit waste outside of the contractual obligation to maintain the property in good condition, KeyCorp had no duty to not negligently misrepresent information about the bonds, independent of KeyCorp's alleged contractual obligation to honor the terms of the bonds. *See* 241 P.3d at 1262. None of the allegations in the amended complaint give rise to even a reasonable inference supporting the claim that KeyCorp had a duty not to commit negligent misrepresentation, independent of the contract (i.e., the bonds). In fact, Plaintiffs allege that KeyCorp's common law duties arise from their contractual relationship–"from the bank's receipt of funds and the establishment and management of the account relating to the bonds." Am. Compl. ¶ 79.

Plaintiffs further allege that KeyCorp breached a fiduciary duty by failing to maintain proper records of the bonds and failing to notify any changes in their accounts. Pls.' Resp. 11. Generally, a bank and a customer deal at arm's length and do not enter into a fiduciary relationship. *Annechino v. Worthy*, 252 P.3d 415, 417 (Wash. Ct. App. 2011). Special circumstances, however, may establish the fiduciary relationship between the bank and its customer. *Tokarz v. Frontier Fed. Sav. & Loan Asso*, 656 P.2d 1089, 1092 (Wash. Ct. App. 1982). Some examples of special circumstances include where: "one who speaks must say enough to prevent his words from misleading the other party; one who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party; and one who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts." *Id.*

Here, Plaintiffs fail to allege that special circumstances existed that would impose a fiduciary duty on KeyCorp. Because Plaintiffs have failed to allege facts supporting an inference that KeyCorp owed Plaintiff any tort or fiduciary duty independent of its alleged contractual duty to honor the terms of the bonds, the Court dismisses Plaintiffs' negligence claim.

F.    The Unjust Enrichment Claim

To establish a claim for unjust enrichment, a plaintiff must allege all three elements: (1) a benefit conferred upon the defendant by the plaintiff, (2) an appreciation by the defendant of the benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make inequitable for the defendant to retain the benefit without the payment of its value. *Bailie Commc'ns v. Trend Bus. Sys.*, 810 P.2d 12, 18 (Wash. App. 1991) (citing Black's Law Dictionary 1535–36 (6th ed. 1990)).

Plaintiffs allege that they deposited money with Rainer Bank, and KeyCorp acquired the deposited money when it purchased several Rainer Bank branches. Pls.' Resp. 21–22. Plaintiffs assert that KeyCorp benefited from Plaintiffs' money and that fairness and justice require KeyCorp to return the money to Plaintiffs. *Id.* KeyCorp argues that Plaintiffs fail to allege facts to show that KeyCorp possessed the money Plaintiffs deposited with Rainier Bank.

Unjust enrichment, however, is "the method of recovery for the value of the benefit retained *absent any contractual relationship* because notions of fairness and justice require it." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) (emphasis added). Here, Plaintiffs allege that there exist express contracts between the parties (i.e., bonds). Because there is alleged contractual relationship between parties, the Court will dismiss the unjust enrichment claim.

### G. The Independent Duty Doctrine Also Bars Plaintiffs' Conversion Claim

A conversion is "the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it." *Judkins v. Sadler-Mac Neil*, 376 P.2d 837, 838 (Wash. 1962). Plaintiffs allege that they are deprived possession of their money because KeyCorp refuses to return their money. Pls.' Resp. 22. KeyCorp asserts that Plaintiffs fail to state a conversion claim because they deposited their money with Rainier Bank, and not with KeyCorp.

Here, the independent duty doctrine bars Plaintiffs' conversion claim. As mentioned previously, under the independent duty doctrine, a party is limited to contract remedies unless there is an independent tort duty. *Eastwood*, 241 P.3d at 1262 ("When no independent tort duty exists, tort does not provide a remedy."); see *Fuji Food Prods., Inc. v. Occidental, LLC*, No. 76152-8-I, 2018 Wash. App. LEXIS 2718, at *14–15 (Wash. Ct. App. Dec. 3, 2018) (holding that the independent doctrine barred the conversion claim because the duty not to steal someone else's property was related to the contractual duty arising out of the parties' lease). As discussed above, Plaintiffs failed to allege that KeyCorp owed them a tort duty independent of its alleged contractual duty to honor the bonds. Therefore, the Court will dismiss the conversion claim.

## V. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the Plaintiffs' Motion for Amend the Complaint (Dkt. No. 11) and GRANTS in part and DENIES in part KeyCorp's motion to dismiss (Dkt. No. 10). Plaintiffs' claims for negligence, unjust enrichment, and conversion are DISMISSED. The motion as to Plaintiffs' remaining claims is DENIED.

DATED this 25th day of October, 2019.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE